**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**PORYA KHALILI,**
1428 Clingmans Dome Dr
Frederick, MD 21702

Plaintiff,

v.

**AT&T MOBILITY SERVICES LLC,**
1209 Orange Avenue
Wilmington, DE 19801

**c/o Registered Agent**
The Corporation Trust, Incorporated
2405 York Road
Suite 201
Lutherville-Timonium, MD 21093-2264

Defendant.

Case No. 1:26-cv-4601

* * * * * * * * * * * * *

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Porya Khalili worked for Defendant AT&T Mobility Services LLC ("AT&T") as a Retail Sales Consultant at its Frederick, Maryland store from October 2020 until AT&T terminated him on August 27, 2026. Beginning in mid-2024, Plaintiff opposed discrimination, supported coworkers' discrimination complaints, requested an accommodation for his hearing impairment, took protected medical leave, and filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

AT&T answered each step with escalating discipline, targeted investigations, harassment by his Store Manager that included Farsi slurs, intimidation aimed at his hearing disability, denial of a promotion, and finally termination. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"), and demands a jury trial on all issues so triable.

## PARTIES

1. Plaintiff Porya Khalili resides in Frederick, Maryland. AT&T employed him as a Retail Sales Consultant at its Frederick, Maryland retail store from October 2020 until August 27, 2026.
2. Defendant AT&T Mobility Services LLC, operates retail wireless stores, including the Frederick, Maryland store located at 5509 Urbana Pike, Frederick, MD 21702 where Plaintiff worked.
3. AT&T is an "employer" within the meaning of 42 U.S.C. § 2000e(b), 42 U.S.C. § 12111(5), and 29 U.S.C. § 2611(4).
4. Plaintiff was an "employee" within the meaning of Title VII and the ADA. He was also an "eligible employee" under 29 U.S.C. § 2611(2).

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under Title VII, 42 U.S.C. § 2000e et seq.; the ADA, 42 U.S.C. § 12101 et seq.; and the FMLA, 29 U.S.C. § 2601 et seq.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred at AT&T's Frederick, Maryland store.

## ADMINISTRATIVE EXHAUSTION

7. On April 2, 2025, Plaintiff filed a charge of discrimination against AT&T with the EEOC, Charge No. 531-2025-00586, concerning discrimination based on national origin and disability and related conduct.
8. On April 17, 2026, Plaintiff amended the charge to add continuing post-charge retaliation, ADA interference, and hostile work environment allegations.
9. The EEOC issued a Notice of Right to Sue on Charge No. 531-2025-00586 on August 7, 2026. Plaintiff files this action within 90 days of receiving that notice.
10. On September 18, 2026, Plaintiff filed a second charge of discrimination against AT&T with the EEOC, Charge No. 531-2026-05943, concerning his August 27, 2026, termination.
11. The EEOC issued a Notice of Right to Sue on Charge No. 531-2026-05943 on September 23, 2026. Plaintiff files this action within 90 days of receiving that notice.
12. Plaintiff has satisfied all administrative prerequisites to his Title VII and ADA claims, including his retaliation claims.
13. Plaintiff's FMLA claims do not require administrative exhaustion. They are timely under 29 U.S.C. § 2617(c) because AT&T's violations were willful, as alleged in paragraphs 27 and 34 through 42, and, in any event, because the adverse actions at issue continued through August 27, 2026.

## FACTUAL ALLEGATIONS

***Plaintiff's Employment and Protected Characteristics***

14. Plaintiff began working for AT&T in October 2020 as a Retail Sales Consultant. He was consistently a strong performer and ranked among the top-performing sales representatives in AT&T's Mid-Atlantic region.
15. At all relevant times, Plaintiff's immediate supervisor was Store Manager Cheri Longo.
16. Plaintiff is of Iranian national origin and speaks Farsi.
17. Plaintiff has disabilities known to AT&T.
18. Plaintiff has permanent hearing loss, caused by a serious motorcycle accident, which substantially limits his ability to hear, particularly in loud environments. He also has Type 2 diabetes, which substantially limits his endocrine function, and depression and anxiety, which substantially limit his brain function, concentration, and sleep.

***Plaintiff's Complaints and Protected Activity***

19. In June 2024, Plaintiff submitted an anonymous complaint to AT&T about inappropriate conduct by Assistant Manager Rahim Hashmat, including speaking negatively about employees, providing inaccurate information to customers, assigning customers only to certain Retail Sales Consultants, and contributing to a toxic work environment and coworker Gavin Chism's resignation. Shortly afterward, AT&T transferred Hashmat.
20. Plaintiff supported and cooperated in AT&T's internal investigation of a discrimination complaint made by his coworker Yaznay Betances. Betances's complaint concerned discriminatory and hostile conduct by Longo, including race- and national-origin-based

remarks and retaliatory scrutiny. Plaintiff also supported coworker Valerine Drayton, who complained about Longo, and Longo later told Plaintiff she knew he had helped Drayton.

21. Beginning September 15, 2024, Plaintiff reported to Longo, AT&T Human Resources, and AT&T's hotline that Assistant Store Manager Ivan LaFontaine Martinez had threatened him for invoking FMLA leave and that management was retaliating against him and subjecting him to a hostile work environment. On September 27, 2024, HR representative Gilda Cuevas told Plaintiff that an investigation would be conducted. On October 7, 2024, Plaintiff told Cuevas in writing that after he disclosed to Longo what he had told the investigator, Longo became visibly upset, and that the frequency and tone of his coachings changed. AT&T took no meaningful corrective action.

22. On or around April 2, 2025, Plaintiff filed EEOC Charge No. 531-2025-00586.

23. Plaintiff engaged in protected activity by using and maintaining approved FMLA leave beginning in or about July 2023, as alleged in paragraph 37, including renewing his request for intermittent FMLA leave in or about August 2024; requesting a disability accommodation on May 7, 2025; taking approved medical leave from January 14, 2026 through March 1, 2026; returning to work on March 4, 2026; and repeatedly complaining to management, HR, and his union about discrimination, retaliation, leave-related mistreatment, and disability-related mistreatment. Plaintiff's intermittent FMLA leave was also certified on or about February 23, 2026.

***Retaliatory Discipline and Investigations***

24. After Plaintiff's August 29, 2024, interview in AT&T's investigation of Betances's complaint and Longo's discovery of what he told the investigator, as alleged in paragraphs 32-34, the number and severity of Plaintiff's coachings intensified. AT&T issued Plaintiff

approximately thirty coachings and written warnings between September 2024 and early 2025.

25. In or about November 2024, AT&T placed Plaintiff on a Counseling Notice, even though he remained one of the top-performing sales representatives in the Mid-Atlantic region.

26. AT&T investigated Plaintiff in October 2024 and, on information and belief, again in January 2025.

27. AT&T coached Plaintiff for transactions in which managers, including Longo herself, participated, observed, or controlled key steps. Longo also said that increased coaching could be used to push employees out. In or about May 2024, shortly after Longo returned from leave, and on other occasions, Longo talked about increasing coachings to remove Yaznay Betances before Betances became eligible for FMLA protection and to keep her from obtaining union protections. Longo later repeated similar sentiments, including saying that she coached employees evenly to get someone out.

28. AT&T knew of Plaintiff's protected activity when it escalated this discipline.

***Failure to Promote***

29. Plaintiff told Longo that he wanted to become Assistant Store Manager. On several occasions before August 2024, including on or about July 7, 2024, Longo told Plaintiff that she wanted to promote him to that position.

30. Plaintiff was qualified. He had worked for AT&T since October 2020 and ranked among the top-performing sales representatives in AT&T's Mid-Atlantic region.

31. On or around August 23, 2024, Betances complained to AT&T that Longo referred to Hispanic customers as "speaky speaky" and made other race- and national-origin-based remarks.

32. On August 29, 2024, Plaintiff was interviewed in AT&T's investigation of that complaint. He told the investigator he had heard Longo mock Spanish-speaking customers by saying "espeaka Spanish."

33. During the week of September 9, 2024, Longo repeatedly asked Plaintiff how his HR interview went. In the manager's office, with Joaquin Zamora present, Plaintiff told her HR had asked about her remarks about Spanish-speaking customers and that he would not lie in the investigation. Longo became visibly upset and later angrily asked Plaintiff why he would betray her.

34. Within days, AT&T management turned on Plaintiff. On September 15, 2024, when Plaintiff said he would use FMLA leave to leave early, Ivan LaFontaine Martinez told him, "don't play with me, I'm going to tell Cheri to put in an investigation on you," and entered a coaching against him the same day. On September 17, during a call with Associate Director Kaleb Alemseged about that incident, Longo contradicted Plaintiff's account, and afterward told him, "you didn't say that so I didn't lie." On September 18, Longo asked Plaintiff whether he wanted to transfer to another store.

35. On or about November 20, 2024, AT&T promoted Zamora, the employee who had witnessed Plaintiff tell Longo he would not lie in the investigation, to temporary Assistant Store Manager. AT&T did not select Plaintiff. Zamora was later made permanent Assistant Store Manager and, on information and belief, was promoted to Store Manager at another AT&T store in or about late 2025.

36. The failure to promote cost Plaintiff higher pay, benefits, and career advancement.

***FMLA Interference and Retaliation***

37. Plaintiff was first approved for intermittent FMLA leave in or about July 2023 because of his serious health conditions. Over the following years, Plaintiff used intermittent leave and a continuous block of leave, and he renewed his request for intermittent FMLA leave in or about August 2024.

38. Management's hostility extended to Plaintiff's use of leave. LaFontaine Martinez's September 15, 2024, threat, alleged in paragraph 34, was made in response to Plaintiff's invocation of FMLA leave.

39. Plaintiff reported that threat to management and HR. AT&T took no corrective action.

40. AT&T imposed inconsistent call-out and reporting expectations on Plaintiff's use of leave and used leave-related events as grounds for scrutiny, coaching, and adverse documentation.

41. Plaintiff took approved block medical leave beginning January 14, 2026, through March 1, 2026, and returned to work on March 4, 2026. Plaintiff's intermittent leave was certified on or about February 23, 2026.

42. Shortly after Plaintiff returned from leave, Longo issued or caused adverse documentation concerning a March 6, 2026, AT&T Internet Air transaction involving an authorized user.

43. AT&T did not subject similarly situated employees who had not taken protected leave to comparable discipline.

***National-Origin and Sex-Based Harassment***

44. Longo, who knew Plaintiff is Iranian and speaks Farsi, repeatedly used Farsi words and vulgar Farsi language toward Plaintiff in the workplace, including in January 2025 and at least once in front of Derek Boening.

45. Longo directed sexually explicit and homophobic remarks at Plaintiff in Farsi, including the phrase “keeram to koonet,” a crude statement that she would perform a sexual act on Plaintiff’s buttocks, and she called Plaintiff “kooni,” a derogatory and homophobic Farsi slur meaning “gay.”

46. Longo used Plaintiff’s native language to demean him because of his Iranian national origin, and she used homophobic and sex-based language to demean him based on his perceived sexual orientation and her views of how a man should be.

47. The harassment was unwelcome and humiliating. Plaintiff raised the slur-related conduct in his EEOC charge and related submissions. AT&T’s own materials reflect that Longo admitted using terms she later learned were offensive.

48. AT&T failed to take prompt or effective corrective action, and Longo remained his supervisor. Plaintiff was also subjected to repeated sex-based and homophobic remarks by coworkers, including a coworker named Adam calling Plaintiff “gay” repeatedly in October 2025 and a coworker named Zach making a similar comment on or about December 7, 2025. Plaintiff reported the coworkers’ conduct to Assistant Store Manager Zamora on or about December 19, 2025, and AT&T took no corrective action.

***Disability Accommodation***

49. Plaintiff told Longo and AT&T that he had permanent hearing damage, relied on lip reading in loud environments, and used AirPods to hear customers and coworkers.
50. On May 7, 2025, Plaintiff submitted formal accommodation paperwork, supported by medical documentation, requesting permission to use Apple AirPods Pro or comparable technology for hearing assistance in the busy retail store.
51. AT&T did not engage in a timely, good-faith interactive process. Instead of assisting him, Longo told Plaintiff to "use your resources."
52. After Plaintiff had submitted medical documentation, Longo and Alemseged questioned him about why he needed hearing assistance, why he needed it now, what he had done before, and why he could not use different devices.
53. AT&T permitted other employees, including Andy Gutierrez, to use AirPods or similar devices without discipline, documentation, or scrutiny, while it selectively enforced its AirPods policy against Plaintiff after his accommodation request and his EEOC charge.
54. AT&T never identified any undue hardship that would result from the accommodation, and it did not provide the accommodation in a timely manner.

***Disability-Related Intimidation***

55. On May 15, 2025, eight days after Plaintiff submitted his accommodation paperwork, Longo and Alemseged met with him about the request. During that meeting, Plaintiff told them that loud, abrupt noise causes him pain and disorientation because of his hearing condition.

56. On or about May 16, 2025, the day after that meeting, Longo physically touched Plaintiff's wrist to inspect his smartwatch and accused him of recording her.

57. On May 17, 2025, two days after Plaintiff told her that loud, abrupt noise causes him pain, Longo slammed an electrical-panel door close to his ear while he sat on break near her office.

58. On or about May 18, 2025, Plaintiff complained in writing to Director of Sales Jillian Miller and Alemseged about how the accommodation process had been handled.

59. On May 21, 2025, on Plaintiff's first shift after his complaint to Miller and Alemseged, Longo showed him a Facebook post depicting a motorcycle crash and said, "This looks like your bike." Longo knew that a motorcycle accident had caused Plaintiff's hearing loss, the disability underlying his request. Plaintiff rides a motorcycle and feared for his physical safety.

60. Plaintiff reported these incidents to management, HR, and his union in writing as they occurred, requested that AT&T preserve the related footage, and on May 28, 2025, filed a police report with the Frederick County Sheriff's Office. AT&T did not produce the footage or take corrective action.

61. On May 29, 2025, Plaintiff sent the police report to AT&T Human Resources. On or about August 2, 2025, after Plaintiff declined to attend a law-enforcement event, Longo, who on information and belief knew that Plaintiff had filed a police report about her conduct, repeatedly asked him, in front of a coworker, whether he was "scared of the police."

62. Longo's conduct was intended to discourage Plaintiff from pursuing his accommodation request and his disability-related complaints.

### *Continuing Hostility and Medical Harm*

63. On December 22, 2025, Longo raised her voice at Plaintiff and demanded to know why he was at work. Plaintiff emailed management and the union documenting the incident and requesting a stable and professional work environment.

64. The cumulative hostility aggravated Plaintiff's medical conditions. On or about October 20, 2025, Plaintiff's primary-care physician documented work-related stress, worsening Type 2 diabetes, elevated glucose, increased medication, nausea, appetite loss, panic symptoms, depression, and anxiety. A related prescription was filled on or about October 23, 2025.

65. Plaintiff's short-term disability paperwork identified January 14, 2026, as his first day absent and October 20, 2025, as his initial treatment date. It identified moderate depressive disorder as a primary diagnosis, with symptoms including low mood, depressed affect, pacing, restlessness, and rumination.

66. Plaintiff's physician referred him for psychological treatment, which he began on or about August 25, 2026, before his termination.

### *Termination*

67. On July 17, 2026, AT&T issued Plaintiff a Final Written Warning for "Failure to Follow Policy/Procedure," based on an HR investigation alleging that Plaintiff failed to protect company assets and failed to properly complete sales transactions, including a June 4, 2026, transaction involving a missing serialized device.

68. On August 12, 2026, AT&T documented a written Code of Business Conduct ("COBC") entry concerning a July 21, 2026, equipment issue.

69. AT&T contended that an August 9, 2026, Next Up turn-in transaction handled by Plaintiff involved missing equipment. The relevant store-camera footage was from approximately 5:40 p.m. on August 9, 2026, and AT&T processed an adjust-out at approximately 4:44 p.m. on August 10, 2026.

70. On August 19, 2026, management met with Plaintiff about the August 9 transaction and showed him only a selected segment of the store-camera footage.

71. The same day, Plaintiff requested in writing, and through his union representative, that AT&T preserve the complete footage and related evidence.

72. On August 27, 2026, eight days after Plaintiff's preservation demand and twenty days after the EEOC issued the Notice of Right to Sue on Charge No. 531-2025-00586, AT&T terminated Plaintiff by telephone.

73. Associate Director Wasif Saleem delivered the termination. Longo, the manager whose conduct was central to Plaintiff's complaints and his EEOC charge, participated in the call. Plaintiff's union representative, Shannon Opfer, was also on the call.

74. AT&T did not provide Plaintiff with a signed termination notice at the time of his termination.

75. AT&T's written termination record cites only the transaction alleged in paragraph 69, which AT&T's records date as August 10, 2026, the date of the adjust-out. It does not cite the July 17, 2026 Final Written Warning.

76. Carlos Bonilla, a Retail Sales Consultant at the same store with the same job title and the same supervisor, handled a July 8, 2026 trade-in transaction in which a device left the store with a customer. On information and belief, AT&T did not discipline him. On information

and belief, Bonilla had not filed an EEOC charge, requested a disability accommodation, or taken protected medical leave, and does not have a disability.

77. Longo, Saleem, and the other AT&T managers involved in the termination knew, or on information and belief knew, of Plaintiff's EEOC charge, his accommodation request, his protected leave, his internal complaints, and his preservation demand.

78. AT&T terminated Plaintiff because of his protected activity under Title VII, the ADA, and the FMLA, and because of his disabilities.

79. As a result of AT&T's conduct, Plaintiff has lost wages and benefits from August 27, 2026 forward, lost promotional compensation, and lost future earnings, and has suffered emotional distress, aggravation of his medical conditions, humiliation, and reputational harm.

## CAUSES OF ACTION

### Count I

### Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)

80. Plaintiff incorporates paragraphs 1 through 79.

81. Plaintiff engaged in protected activity by opposing discrimination, supporting and cooperating in Betances's discrimination complaint, opposing Longo's discriminatory remarks by truthfully reporting them in AT&T's investigation of Betances's complaint, filing internal complaints, filing EEOC Charge No. 531-2025-00586, and demanding preservation of evidence relating to his claims.

82. AT&T knew of Plaintiff's protected activity. Longo learned directly of Plaintiff's statements in the investigation of Betances's complaint, as alleged in paragraph 33. Plaintiff made his internal complaints to Longo, Human Resources, and AT&T's hotline,

as alleged in paragraph 21. AT&T responded to Plaintiff's EEOC charge, as alleged in paragraph 47, and received his written preservation demand, as alleged in paragraph 71. The managers who decided to terminate Plaintiff knew of his protected activity, as alleged in paragraph 77.

83. AT&T took materially adverse actions against Plaintiff, including repeated coachings and written warnings, targeted investigations and scrutiny, a November 2024 Counseling Notice, adverse documentation shortly after his return from medical leave, the July 17, 2026 Final Written Warning, intimidation, and termination.

84. These actions would dissuade a reasonable worker from making or supporting a charge of discrimination. The timing of the actions, Longo's statements about using coaching to push employees out, AT&T's treatment of Plaintiff after his protected activity, and AT&T's inconsistent treatment of comparable conduct by other employees support an inference that Plaintiff's protected activity caused the adverse actions.

85. AT&T violated 42 U.S.C. § 2000e-3(a).

**Count II**
**Hostile Work Environment Based on National Origin in Violation of Title VII, 42 U.S.C. § 2000e-2(a)(1)**

86. Plaintiff incorporates paragraphs 1 through 79.

87. Longo subjected Plaintiff to unwelcome harassment because of his Iranian national origin, including Farsi slurs and vulgar Farsi language, as alleged in paragraphs 44 through 47. Longo's mockery of Spanish-speaking customers' language, alleged in paragraphs 31–32, confirms that her use of Plaintiff's native language to demean him was directed at his national origin.

88. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. Longo, Plaintiff's direct supervisor, repeatedly directed vulgar Farsi language at him, including a slur and a sexually explicit remark, and did so at least once in front of a coworker, as alleged in paragraphs 15 and 44 through 47. The harassment was humiliating, AT&T left Longo in place as Plaintiff's supervisor, and the hostile environment contributed to the work-related stress and aggravation of Plaintiff's medical conditions alleged in paragraphs 48 and 64 through 65.

89. AT&T is liable for Longo's harassment. Longo was Plaintiff's supervisor, with authority to discipline him, and she issued or caused discipline against him, as alleged in paragraphs 15, 24, and 42. Her harassment culminated in tangible employment actions, including escalating discipline and his termination, in which Longo participated, as alleged in paragraphs 67 and 72 through 73. Alternatively, AT&T knew of the harassment, including through Plaintiff's EEOC charge, and its own materials reflect that Longo admitted using the offensive terms, as alleged in paragraph 47. AT&T failed to take prompt and effective corrective action and left Longo in place as his supervisor, as alleged in paragraph 48. Plaintiff did not unreasonably fail to use AT&T's complaint procedures.

90. AT&T violated 42 U.S.C. § 2000e-2(a)(1).

**Count III**

**Hostile Work Environment Based on Sex in Violation of Title VII, 42 U.S.C. § 2000e-2(a)(1)**

91. Plaintiff incorporates paragraphs 1 through 79.

92. Title VII's prohibition of discrimination because of sex includes discrimination based on sexual orientation, actual or perceived.

93. Longo subjected Plaintiff to unwelcome harassment because of sex. As alleged in paragraph 45, she told Plaintiff in Farsi that she would perform a sexual act on his buttocks, and she called him "kooni," a homophobic slur meaning "gay." Plaintiff was also subjected to repeated sex-based and homophobic remarks by coworkers, which he reported to AT&T without any corrective action, as alleged in paragraph 48.

94. Considered together with Longo's other harassment, and AT&T's failure to correct sex-based and homophobic comments after Plaintiff reported them, this conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

95. AT&T is liable for Longo's harassment for the reasons alleged in paragraph 89.

96. AT&T violated 42 U.S.C. § 2000e-2(a)(1).

**Count IV**
**Retaliatory Failure to Promote in Violation of Title VII, 42 U.S.C. § 2000e-3(a)**

97. Plaintiff incorporates paragraphs 1 through 79.

98. Plaintiff engaged in protected activity by participating in AT&T's investigation of Betances's discrimination complaint, truthfully reporting Longo's remarks about Spanish-speaking customers, and refusing to lie in that investigation, thereby opposing Longo's discriminatory conduct, as alleged in paragraphs 20 and 31–33. Longo knew of that activity, as alleged in paragraph 33.

99. Plaintiff was qualified for the Assistant Store Manager position, and Longo had told him she wanted to promote him, as alleged in paragraphs 29–30. AT&T selected Zamora instead, as alleged in paragraph 35.

100. Longo learned of Plaintiff's protected activity during the week of September 9, 2024, reacted with anger, and asked him why he would betray her. Within days,

management turned on him, and on or about November 20, 2024, AT&T selected Zamora instead of Plaintiff. Longo's reaction, the hostility that followed, and the timing of the selection, as alleged in paragraphs 33–35, support an inference that Plaintiff's protected activity caused AT&T not to promote him.

101. AT&T violated 42 U.S.C. § 2000e-3(a).

**Count V**

**Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12112(a)**

102. Plaintiff incorporates paragraphs 1 through 79.

103. Plaintiff is an individual with a disability, as alleged in paragraphs 17 and 18. He was a consistently strong performer, as alleged in paragraph 14, and was able to perform the essential functions of his position with or without reasonable accommodation.

104. Because of his disabilities, AT&T subjected Plaintiff to selective enforcement of its AirPods policy, heightened scrutiny, discipline, and termination. Longo's hostility toward Plaintiff's hearing disability, including questioning his need for hearing assistance, slamming a door near his ear after he disclosed that loud noise causes him pain, and showing him an image of a motorcycle crash knowing that such a crash caused his hearing loss, as alleged in paragraphs 52 and 57 through 59, shows that his disability motivated AT&T's treatment of him. Longo participated in his termination, as alleged in paragraph 73.

105. On information and belief, AT&T treated employees without disabilities, including Carlos Bonilla, more favorably in comparable circumstances.

106. AT&T violated 42 U.S.C. § 12112(a).

## Count VI

## Retaliation in Violation of the ADA, 42 U.S.C. § 12203(a)

107. Plaintiff incorporates paragraphs 1 through 79.

108. Plaintiff engaged in protected activity by requesting accommodation, submitting medical documentation, opposing disability-related mistreatment, complaining internally, filing EEOC Charge No. 531-2025-00586, and demanding preservation of evidence.

109. AT&T knew of that activity. Plaintiff submitted his accommodation request and medical documentation to AT&T and met with Longo and Alemseged about it, as alleged in paragraphs 50 and 55. He complained in writing to Miller and Alemseged, reported the disability-related incidents to management, Human Resources, and his union, and sent his police report to Human Resources, as alleged in paragraphs 58, 60, and 61. AT&T responded to his EEOC charge and received his preservation demand, as alleged in paragraphs 47 and 71, and the managers who decided to terminate him knew of his protected activity, as alleged in paragraph 77.

110. AT&T took materially adverse actions against Plaintiff, including selective enforcement of its AirPods policy, the intimidation alleged in paragraphs 55 through 62, escalating discipline, adverse documentation shortly after his return from medical leave, the July 17, 2026 Final Written Warning, and termination.

111. These actions would dissuade a reasonable worker from requesting accommodation or opposing disability discrimination.

112. AT&T violated 42 U.S.C. § 12203(a), and Plaintiff is entitled to the remedies provided by 42 U.S.C. § 12203(c).

**Count VII**

**Interference, Coercion, and Intimidation in Violation of the ADA, 42 U.S.C. § 12203(b)**

113. Plaintiff incorporates paragraphs 1 through 79.

114. Plaintiff exercised rights protected by the ADA by requesting accommodation, submitting medical documentation, and opposing disability-related mistreatment.

115. AT&T, through Longo, coerced, intimidated, threatened, and interfered with Plaintiff in the exercise and enjoyment of those rights, as alleged in paragraphs 49–62, including by questioning the legitimacy of his disability after he submitted medical documentation, inspecting his smartwatch the day after the accommodation meeting, slamming a panel door near his ear two days after he disclosed that loud noise causes him pain, displaying a motorcycle-crash image on his first shift after he complained about the accommodation process, and mocking him for reporting her conduct to police.

116. Most of this conduct occurred within fourteen days of Plaintiff's accommodation request and was aimed at the disability underlying it. It would deter a reasonable employee from requesting accommodation or opposing disability discrimination.

117. AT&T violated 42 U.S.C. § 12203(b).

**Count VIII**

**Disability-Based Hostile Work Environment in Violation of the ADA, 42 U.S.C. § 12112(a)**

118. Plaintiff incorporates paragraphs 1 through 79.

119. Plaintiff was subjected to unwelcome harassment because of his disability and his accommodation request, including the conduct alleged in paragraphs 49 through 62.

120. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Longo, Plaintiff's direct supervisor, questioned the legitimacy of

his disability after he had documented it; physically touched him to inspect his smartwatch; slammed a door close to his ear two days after he disclosed that loud noise causes him pain; and showed him an image of a motorcycle crash, knowing that a motorcycle crash caused his hearing loss, leaving him in fear for his physical safety, as alleged in paragraphs 15, 52, and 55 through 59. Longo continued to mock him months later, as alleged in paragraph 61. The harassment contributed to the work-related stress and aggravation of Plaintiff's medical conditions alleged in paragraphs 64 and 65.

121. AT&T is liable for Longo's harassment. Longo was Plaintiff's supervisor, with authority to discipline him, and she issued or caused discipline against him, as alleged in paragraphs 15, 24, and 42. Her harassment culminated in tangible employment actions, including escalating discipline and his termination, in which Longo participated, as alleged in paragraphs 67 and 72 through 73. Alternatively, AT&T knew of the harassment. Plaintiff reported it in writing to management, Human Resources, Director of Sales Jillian Miller, Alemseged, and his union, and sent AT&T his police report, as alleged in paragraphs 58, 60, and 61. AT&T failed to take prompt and effective corrective action and left Longo in place as his supervisor, as alleged in paragraphs 48 and 60. Plaintiff did not unreasonably fail to use AT&T's complaint procedures.

122. AT&T violated 42 U.S.C. § 12112(a).

**Count IX**

**Interference in Violation of the FMLA, 29 U.S.C. § 2615(a)(1)**

123. Plaintiff incorporates paragraphs 1 through 79.

124. Plaintiff was an eligible employee with serious health conditions, and AT&T was a covered employer. As alleged in paragraph 37, Plaintiff was first approved for FMLA

leave in or about July 2023, used intermittent and continuous leave thereafter, and renewed his request for intermittent FMLA leave in or about August 2024. Plaintiff also took approved block medical leave from January 14, 2026, through March 1, 2026, returned to work on March 4, 2026, and had intermittent leave certified on or about February 23, 2026.

125. AT&T interfered with, restrained, and denied Plaintiff's FMLA rights by threatening him with investigation for invoking the FMLA, imposing inconsistent reporting expectations, monitoring or questioning leave-related activity, using leave-related events as grounds for scrutiny and discipline, and issuing adverse documentation shortly after his return from leave.

126. AT&T's violations were willful. AT&T knew that its conduct was prohibited by the FMLA or acted with reckless disregard for whether it was. Longo understood the FMLA's protections and discussed using increased coaching to remove an employee before she became eligible for them, as alleged in paragraph 27. LaFontaine Martinez threatened Plaintiff with an investigation and entered a coaching against him the same day Plaintiff invoked FMLA leave, as alleged in paragraph 34. Plaintiff reported that threat to Longo, Human Resources, and AT&T's hotline, and AT&T took no corrective action, as alleged in paragraphs 21 and 39.

127. AT&T's interference caused Plaintiff to lose compensation and benefits and to incur other monetary losses.

128. AT&T violated 29 U.S.C. § 2615(a)(1).

## Count X

### Retaliation in Violation of the FMLA, 29 U.S.C. § 2615(a)(2)

129. Plaintiff incorporates paragraphs 1 through 79.

130. Plaintiff engaged in protected activity by requesting and taking FMLA leave, as alleged in paragraphs 37 and 41. AT&T knew of that activity: it approved and certified his leave, LaFontaine Martinez threatened him in direct response to his invocation of FMLA leave, as alleged in paragraph 34, and the managers who decided to terminate him knew of his protected leave, as alleged in paragraph 77.

131. AT&T took adverse actions against Plaintiff, including the threat of investigation, increased scrutiny, adverse documentation, inconsistent enforcement of policies, the July 17, 2026 Final Written Warning, and termination.

132. The timing of those actions, Longo's statements about using coaching to push employees out, AT&T's more favorable treatment of comparable conduct by other employees, and the pattern of escalating discipline after Plaintiff used protected leave support an inference that Plaintiff's protected leave caused the adverse actions.

133. AT&T's violations were willful. AT&T knew that its conduct was prohibited by the FMLA or acted with reckless disregard for whether it was. Longo understood the FMLA's protections and discussed using increased coaching to remove an employee before she became eligible for them, as alleged in paragraph 27. LaFontaine Martinez threatened Plaintiff with an investigation and entered a coaching against him the same day Plaintiff invoked FMLA leave, as alleged in paragraph 34. Plaintiff reported that threat to Longo, Human Resources, and AT&T's hotline, and AT&T took no corrective action, as alleged in paragraphs 21 and 39. AT&T then terminated Plaintiff with knowledge of his protected leave, as alleged in paragraphs 72 through 73 and 77.

134. AT&T violated 29 U.S.C. § 2615(a)(2).

## DAMAGES

135. As a direct and proximate result of AT&T's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits from August 27, 2026 forward, lost promotional compensation, and lost future earnings.

136. Plaintiff has also suffered emotional distress, humiliation, reputational harm, and aggravation of preexisting medical conditions, including worsened Type 2 diabetes, elevated glucose, increased medication, nausea, appetite loss, panic symptoms, depression, and anxiety. Plaintiff's treatment for aggravated symptoms began before his termination and continues.

137. AT&T acted with malice or with reckless indifference to Plaintiff's federally protected rights within the meaning of 42 U.S.C. § 1981a(b)(1), entitling Plaintiff to punitive damages on Counts I through V and VIII.

138. Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 1981a on his Title VII claims and his ADA claims to the extent available; lost wages, benefits, interest, liquidated damages, and equitable relief under 29 U.S.C. § 2617 on his FMLA claims; and all other relief available under each statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against AT&T Mobility Services LLC and award:

A. Back pay, lost benefits, lost promotional compensation, and other economic damages;

B. Reinstatement or, if reinstatement is not feasible, front pay;

C. Compensatory damages for emotional distress, humiliation, aggravation of medical conditions, reputational harm, and other non-economic injuries;

D. Liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii);

E. Punitive damages to the extent permitted by law;

F. Prejudgment and post-judgment interest;

G. Reasonable attorneys' fees, expert fees, and costs;

H. Equitable and injunctive relief, including expungement of retaliatory disciplinary records; and

I. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 4, 2026

Respectfully submitted,
**QUINN PATTON, LC**
/s/ Sedinam Anyidoho
Sedinam Anyidoho, Bar # 32344
838 Ritchie Highway, Suite 4
Severna Park, Maryland 21146
(443) 247-5444
sedinama@quinnpatton.com